Which is David Stewart versus the Attorney General The expert affidavit by Professor Eadie was for Mr. Stewart's presentation of his case the key piece of evidence, the key information about the treatment of homosexuals in Jamaica in terms of background information, the society, the police, the government and this court, the immigration judge utterly failed to consider that evidence and the Board of Immigration had affidavit against other evidence that was in the record. Both are legal and constitutional errors. This case is a very unusual case of this type of a convention against torture claim. We have in the record the fact of Mr. Stewart being chased after a party, dancing with his gay partner. Let's go to the first point, Sinead. My understanding is that it's your position that the IJ failed to take into consideration the affidavit. Yes, and erred to allow the telephonic testimonies or video testimony, right? In page 2 in the last paragraph of the IJ's finding, the IJ specifically stated that the IJ had considered all of the evidence, even if not specifically discussed in the opinion and then attached as one of the pieces of documents and evidence is the declaration by the expert. Yes, which I submitted. That was my submission to the court, of course. And so that was one of the pieces of evidence that she considered. Well, that statement and using the word considered is the extent of it. But the whole point of an expert is a matter of DR and others' cases explained, is it necessary to weigh the weight, the probative weight, the inferences, the social context? There are many parts. I mean, the professor, it's hard to credit the judge's assertion when the expert says that the police are guided by the anti-buggery laws and the laws of the church and are willing to turn a blind eye to attacks on homosexuals and that it's more likely than not that David these are directly the main issue in this case that the judge supposedly considered. But I think the court can see through the claim of consideration and look to the substance that consideration means actually addressing some of the evidence, which did not at all happen here, except at the BIA level in the first instance. Well, what about the following discussion by the IJ? Respondent has not shown, I'm on page 14 of the IJ's opinion. Under the heading, Respondent is not eligible for relief under CAT. The IJ spends a lot of ink talking about at least what he found meaningful factually. Quote, respondent argues the government's acceptance of homophobia and continued criminalization of homosexual activity constitutes acquiescence to torture. This court is not aware of a single case where institutionalized homophobia was found to constitute acquiescence. Furthermore, while the evidence in the record paints a picture of a society that is largely homophobic, it does not show that the government consents or is willfully blind to the murder or torture of members of the LGBT community. In fact, Respondent's own evidence demonstrates the government is working to protect the LGBT community from physical violence. And then he goes on for, I don't know, a page and a half talking about what he found and and discredited others and you're just not happy what he highlighted? I mean, he didn't have to, as a matter of law, single out each piece of evidence and comment about each piece, did he? Right. That's black letter law. You don't have to comment about every evidence. So what did he do that was so wrong as to amount to fatal error in his fact-finding process? Well, not allowing the telephonic or video testimony of our main evidence, which is the witness who can put all of this other evidence into context. If you have. But he doesn't have to allow videotape testimony. He has the affidavit. He lists the affidavit. Well, it is a discretionary whether or not to allow testimony, but the law and due process require that an applicant can make a case. It's not discretionary to decline to allow videotape testimony? Well, if it, as in this case, does prevent the applicant from making a case. Mr. Stewart himself was on a video. He wasn't even in the court and there's no record or no, it can't be supposed that having the expert who's in Massachusetts and could not come. Can I ask you about one of your legal issues? You complain that the BIA engaged in fact-finding, but of course, in this case, the facts it found were the same as the facts the IJ found. So, it can't really be a case of impermissible fact-finding in that sense. I mean, those cases all have to do with the BIA finding facts differently from the IJ, don't they? Well, in the Jujoha Ju case, the BIA took it, arrogated it to itself, its authority to decide de novo country background conditions, which they did in this case as well. And that's not, it's not allowed. The IJ has to, has to consider the evidence, including the As I read the BIA case, they were saying that the IJ's decision did not, was not erroneous, that it, it was consistent with facts that it observed. But that's not the same as finding different facts from the IJ, is it? It didn't find different facts, but it said, we, we find that these, the facts that the IJ found are, are copious evidence that overrides the, the, the expert opinion, which is what our appeal was mainly concerned about. So making that comparison and, of, and weighing the evidence for in the first instance by the BIA is, is not permitted and it must be done by the IJ, not by the BIA. You're assuming that the BIA did its own weighing of evidence and that is error, even though it came out the same as the IJ? Correct, because the IJ has to do it. Let me ask the question this way and go back to what you said just a few moments ago about a purported violation of Stewart's rights because the IJ did not allow Eddie to testify by video. Yes, Your Honor. What is it that suggests that the IJ was required to allow the video in as opposed to reading the declaration, summary of the evidence? How did that amount to a violation of the liberty interest? We, we had made two motions. We had made clear to the IJ how important her testimony was by two motions to request either telephonic or video evidence. Her affidavit itself says, I'm prepared to testify in detail about the risk Mr. Stewart faces in court. I will concede that it would be wiser to have the video and hear the testimony live rather than take it in written form, but that isn't the thrust of my question. The question is whether or not this is error on the part of the IJ for not allowing the video. An immigration judge may conduct hearings, not shall, but may conduct hearings through a video conference to the same extent as he or she may conduct hearings in person. That's what the CFR says and we've said there's certainly no constitutionally protected liberty interest in receiving the testimony in that form as opposed to in some other form. See, if you refuse to consider it at all, I think you'd be dead right, but I don't see where the error is to be found in simply refusing to take the video in. What am I missing there? Well, it is tied to the fact that IJ did not in any just articulable way consider. No, no, no. Now you've moved to another ground. We already started with that. Then you said he just did a crummy job with the evidence. But the point you were making just a moment ago was a procedural argument that it was error not to receive the video, not to receive the evidence in that form. And I'm simply asking you, what is there that suggests that he was obliged to consider it by way of video rather than it was purely precatory? And if he chose to take it in written form, how is that fatal error? And your answer to me then is, well, he did a crummy job. No. Well, in addition, in this case, and I want the court to realize that this procedure in Lumpkin, Georgia is at some distance from attorneys and experts and others, and that for a full and fair hearing, which the law, regulation, and due process require, would, I think, in a case like this and under the facts of Mr. Stewart's case, require that the judge allow telephonic or video testimony on the relevant key point of the risk of torture or being killed in Jamaica, and especially in a case where his partner was killed a month after the partner's police officer brother died, where it's not like there's no issue here. It's not like it's overwhelmingly true that Mr. Stewart is safe. There is a real issue, and in this case, given that... See, I agree with you that there's a real issue, but what you've got to show me is that what the IJ did in the fact finding was so wrong, went beyond the goalposts, and that's what I'm having trouble understanding. I understand you to say basically two things. One, procedurally, it was a violation not to allow the testimony in by video, but I see nothing that required him to allow it in that way. And two, you say, even having considered what came in in written form, it was obviously error to reach the factual decision that he did. I hear you to say sort of both of those things, but what I want to know is whether there was any real difference between what the video showed and what otherwise came in in written form from Eddie. I don't know what the video showed. We didn't get the video. Right, but what would a deposition have shown, a video kind of deposition have shown, that you did not already present by way of written... It might have been a picture maybe worth a thousand words and a video maybe worth a thousand pictures, but what I'm asking was, was there anything substantively different that he would have recounted that he didn't otherwise recount in the physical form, in the written form? Yes, because the weighing and the social connections, what is an expert? I mean, it goes to the question, what does expertise even mean in a case like this, and what is the value and importance of an expert opinion? And the connection between, you know, connecting the dots. So, of course, I can't complain if they just connect dots in a way that I don't like, but the expert has to, I think, and I think it's important for courts to know that experts are important to connect the dots in a social context when different inferences can be drawn. And so the expert could talk about the concerns that the judge has about... Right. Of course, this wouldn't be the first time that an expert's testimony was presented in a court of law, not live, but in written form, received and evaluated in written form. Right. But in this case, they didn't discuss any conclusion or any statement or any fact or any assertion by the expert. They only said it was in the record, closed the case for the petitioner, for the applicant, and will only look at the government's evidence that shows that there is not such a risk that the expert could have given cogent reasons why what happened to Mr. Stewart's partner would likely happen to him, which is what the expert concluded. And in an asylum and torture case, what happens to your loved ones or your partners is normally very probative evidence. And even despite that, the immigration judge did not go beyond using the word consider and looking at that affidavit. And I really... Let me make just a suggestion to you. You're happy to, if you want to eat into your rebuttal time, that's fine. But we've given you five minutes for rebuttal. You've been over... No, you've been answering our questions. You need not be sorry. But I'm just saying, if you're going to want to go on now, we're going to have you eat into your rebuttal. Okay. I'll wait for... Okay. Thank you. Thank you. May it please the Court. Matthew George for the Attorney General. Here, the immigration judge's decision not to allow the expert's video testimony was well within her discretion. Both statutory and regulatory reasons support that. The immigration judge is allowed to conduct proceedings however she sees most fit, as would any fact finder, as would any district judge determine how proceedings should be run. The Due Process Clause does not require a particular form of testimony. It simply requires the opportunity to be heard. And that happened here when the immigration judge accepted and considered the expert's written report. To that end, the expert judge said twice that she considered the report. She listed the report in her decision as an exhibit that she considered. The immigration judge said I considered the affidavit? She didn't... I didn't remember that. Well, she said she considered all evidence even if she didn't specifically discuss it. Okay. And then she said... But she does not cite the affidavit as Judge Rustani is pointing out, right? Specifically. That's correct, Your Honor. As the board pointed out, she did not explicitly or expressly discuss the affidavit. I didn't know what she meant when you said she twice said she considered, quote, the report. Well, on page, record page 96, she says all evidence has been considered. Okay. Even if not explicitly discussed. What page is that in the actual judge's opinion? I've got it in front of me. I'm talking about the IJ. I believe it's the second page, Your Honor. It's page 96 of the record. Okay. At this proceeding, the applicant appeared by videotape? I think that's accurate. Oh, okay. All right. By video. All right. And is that in other people appeared by video or in person? How is it going? I believe his mother testified. I believe she was in person, but I'm not... Okay. I'm not sure. I think there was a contingent of people that came down to the immigration court. All right. Now, I think the IJ said she had trouble with telephonic testimony, and I can understand that because I don't like that myself when I can't see the person. But she had used videotape for at least the applicant. Yes, Your Honor. That's because it was a detention facility. I believe there were some issues with... Okay. I got you. ...him being detained. And Your Honor is correct about how the request went. First, there was a request for telephonic testimony. The immigration judge said she doesn't like telephonic testimony because it's difficult to determine who's actually on the phone. Then there was a motion for the video testimony, and it said little more than, well, the expert would like to supplement the declaration. Without saying what else would be in the supplement. That is the extent of what that motion said. So the immigration judge said, you haven't shown good cause and the affidavit is enough. And that's what she admitted into the record, and there's no dispute that that was admitted. So it's clear the IJ was aware of the affidavit because she made a ruling on the videotape testimony and decided there was going to be nothing else. Yes, Your Honor. Wouldn't it have been wiser to allow the video? Absolutely. I mean, for the life of me, I do not understand why you wouldn't take the expert in video where you could have an examination direct across. If the court has a question, it could put it itself. It's very different from just having a raw record. I agree, Your Honor. I don't know what was going through the immigration judge's head. I don't know if... Is that a common practice that while the rule is precatory, it says may, may means they don't as a matter of course? Not in my experience. Beyond the record in asking that question, but it's sort of perplexed me because it's not the first time I've seen a circumstance where a video was available and they refused to use it. It's not in my experience. I think it's all across the board in cases that I've seen. I don't know that there's a general rule. I mean, I know this immigration judge sits in a detention facility, so I don't know if that plays into her thinking in terms of what witnesses to take, and I don't know if... I'm just talking about an expert in particular, given the centrality of an expert about the nature of conditions in a foreign land. I think it's all across the board, Your Honor, with what various judges may think. I know, I believe I've seen cases that I've worked on where immigration judges have accepted telephonic testimony, so I know that that sometimes does happen. It probably just comes down to individual judges in terms of what each judge wants to take and consider, but regardless, there's no obligation to take video testimony, certainly where the immigration judge here accepted the written declaration and then sort of going beyond that, even if that were somehow a due process violation, which it's not, or a discretionary violation, which it's not. Petitioners never said, what evidence would the expert even have provided that's not in the written report? So what difference would it even make to have that expert testify? I know my opponent tried to come up with some reasons in his presentation, but that's never been presented either in the record or even in his brief of what the expert even would add to the discussion in a meaningful way, sort of directly from the expert, other than counsel making representations about it. Turning to the board's decision in terms of the immigration judge's actual consideration of the expert's report, as I mentioned, the immigration judge listed it, said she's considered it even if she doesn't explicitly address it. The immigration judge then goes on to address a significant amount of the evidence, citing nine particular examples from various, not just one singular report in the record, from various reports in the record, looking at a variety of different things, citing nine different examples of what the police in Jamaica are doing, while also acknowledging sort of nine examples of positive things, acknowledging negative things, considering and weighing all of that together to reach her conclusion. That's reasoned consideration of the CAT claim in this case, and that's all she's required to do. Once she's done that, she doesn't need to explicitly address each particular piece of evidence or each particular claim, and that's what the court has said over and over in cases such as June and Tan, talking about the notion of reasoned consideration. And so, when the board takes a look at it and says, yes, the immigration judge didn't explicitly or expressly discuss it, however, looking at the entirety of the record, all of the evidence, it's not going to make a difference to send it back, to have the immigration judge explicitly consider it. And essentially, because she gave it reasoned consideration, because of all this other evidence in the record, it's not necessary for her to send it back. The board isn't making factual findings. It isn't overruling the immigration judge. It isn't saying the expert's declaration says he's going to be tortured, says he's not going to be tortured, or making an explicit finding. It's saying, looking at this record as a whole, the copious amount of evidence that the immigration judge cited in terms of supporting her decision, they're making the call that it's not going to make a difference. It's not a good use of judicial resources to send this back, to have the immigration judge explicitly consider the expert's declaration. And that's all because she gave it reasoned consideration, because the board has looked at it a second time. All of that comports with what the court says is necessary for it to occur, and it doesn't violate due process in any sense, either what the immigration judge did, or her decision not to explicitly or expressly consider that report. Then, as sort of a final matter, the final prong of any, even if there was, some due process violation, we get to the prejudice that Petitioner must demonstrate. He's failed to do that, either in terms of the immigration judge's decision not to allow the testimony, or in terms of the immigration judge's decision not to expressly or explicitly consider the report. I saw a hint of something that might have benefited from some further explication, and that was something in the affidavit that said, under the new political situation, they weren't making as many efforts to protect homosexuals as they were before. But my question to you is, was there any request to explicate the current political conditions since 2016? I mean, that's what I might like to have heard about, but if counsel doesn't tell me, that's what they want to do. I don't think any request is made in that particular fashion. I know there are several statements from public officials in Jamaica that we cited in our brief about their feeling, as current as the record was at the time. Right. So this was in 17, and I think some political change happened in 16. Okay. But there was no specific request to add more on that. Okay. No, Your Honor. Thank you. Nothing that targeted, that Petitioner has ever made, or ever said that, look at this particular piece of the report, that's what we want considered, anything of that nature. It's all just in this shit, very generic. More, I guess, getting to, well, we wanted the video testimony, but we never say what the video testimony is going to add. Right. It's not already in the report. Okay. And it's a report that the immigration judge said she considered, and under the presumption of regularity, Petitioner's never showed that, anything to suggest that the immigration judge didn't consider it, even though she didn't expressly or explicitly discuss it. And so, because that decision to allow the video testimony was well within the immigration judge's discretion, that was not a violation. The immigration judge gave reasoned consideration to the claim, so her decision not to expressly or explicitly discuss the report is not a violation. And even if somehow any of that was a violation, Petitioner's failed to show any prejudice from it. Therefore, the court should dismiss this petition on the criminal alien bar grounds, unless there are any questions. Anything further? No. Thank you very much. Mr. Cox, you have the last word, and you have reserved five minutes for your rebuttal. I just want to say, briefly address this. You know, the CAT claim, it's a life or death decision, is for the individual concerned, is of extreme importance. And the fine difference is whether you're 49 percent likely or 51 percent likely to suffer torture or be killed. So it's a case where any relevant information is of crucial, crucial importance in this case. And, you know, I hope the court can clarify whether, when, and what circumstances that discretion should be properly exercised to have, to accept, you know, testimony from electronic means. You know, this, I mean, the court has asked about it. You see, the problem that you have is we have already said that the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest or due process. That's the problem. Where it's discretionary in nature, and plainly, the CFR says this is discretionary in nature, the argument is a difficult one to accept unless the judge had refused to consider the evidence in any form. But that's not what you have here. Well, discretionary, the CAT is not discretionary. The relief is not discretionary. No, what is discretionary is whether or not to allow a video testimony at a hearing. That's expressly left to the discretion of the IJ by 8 CFR 1003. Well, except that when there are due process concerns, and I have to say that, you know, this IJ denies asylum 97 percent of the time and denies electronic expert testimony 100 percent of the time. There is no way you can go to this court and ever get the testimony you want from any, unless an expert can actually be present in person. And this is just not a fair proceeding, Your Honors. This is not an opportunity to present your case on a life and death issue of CAT. I think that not only did the BIA exercise on its own weighing of evidence, but that for people to have a fair proceeding and present evidence that they want to present, there must be The hearing was conducted in D.C., I take it. Lumpkin, Georgia. Lumpkin, Georgia. And where was the expert located? Amherst, Massachusetts. Okay. And well, if there are no further questions, I rest on my brief, Your Honors. Thank you very much. Thank you both for your efforts. This court will be in recess until 9 a.m. tomorrow morning. Thank you.